IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KAREN LOUISE JOHNSON,                §
                                     §
          Plaintiff,                 §
                                     §
V.                                   §          No. 3:16-cv-69-BN
                                     §
CAROLYN W. COLVIN,                   §
Acting Commissioner of Social Security, §
                                     §
          Defendant.                 §

## MEMORANDUM OPINION AND ORDER

Plaintiff Karen Johnson seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is reversed.

### Background

Plaintiff alleges that she is disabled due to a variety of ailments, including major depressive disorder. *See* Administrative Record [Dkt. Nos. 11 & 12 ("Tr.")] at 85-86. After her application for supplemental security income ("SSI") benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on March 18, 2014. *See id.* at 71- 123. At the time of the hearing, Plaintiff was 50 years old. *See id.* at 78. She has a tenth grade education, *see id.* at 81, and has no past relevant work experience, *see id.* at 82. Plaintiff has not engaged in substantial gainful activity since August 8, 2012. *See id.* at 59, 82.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. Although the medical evidence established that Plaintiff suffered from major depressive disorder, recurrent, with psychotic features; cannabis abuse; degenerative disc disease of the cervical spine; mild degenerative joint disease in the knees; hypertension; obesity; and degenerative joint disease in the shoulders, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 59. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of light work, *see id.* at 61-62, and Plaintiff has no past relevant work, *see id.* at 64. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a bakery worker on a conveyer line, plastics inspector or hand packager, or small products assembler-- jobs that exist in significant numbers in the national economy. *See id.* at 64-65.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

In a single ground for relief, Plaintiff contends that the ALJ improperly rejected the opinions of her treating and examining physicians.

The Court determines that the hearing decision must be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole

and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued

period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1.  The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.  The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.  The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.  If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.  If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. The analysis is: First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical

4

or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

6

### Analysis

Plaintiff contends that the ALJ erred by not considering the 20 C.F.R. § 416.927(c) factors and by applying incorrect legal standards to the opinions of her treating and examining physicians.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan*, 38 F.3d at 237. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez*, 64 F.3d at 175-76 (citing 20 C.F.R. § 404.1527(c)(2)). And "[t]he opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). But the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" when good cause is shown. *Id.* at 455-56 (internal quotations omitted). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Section 404.1527(c)(2) requires the ALJ to consider specific factors "to assess the weight to be given to the opinion of a treating physician when the ALJ determines that

7

[the opinion] is not entitled to 'controlling weight.'" *Id.* at 456. Specifically, the ALJ must consider:

> (1) the physician's length of treatment of the claimant;
>
> (2) the physician's frequency of examination;
>
> (3) the nature and extent of the treatment relationship;
>
> (4) the support of the physician's opinion afforded by the medical evidence of record;
>
> (5) the consistency of the opinion with the record as a whole; and
>
> (6) the specialization of the treating physician.

20 C.F.R. § 404.1527(c)(2); *accord* 20 C.F.R. 416.927(c)(2) (mental impairments); *see also Newton*, 209 F.3d at 456. The ALJ must consider all six of the Section 404.1527(c)(2) factors if "controlling weight" is not given to a treating physician's medical opinions. *See* 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."); *see also Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *McDonald v. Apfel*, No. 3:97-CV-2035-R, 1998 WL 159938, at *8 (N.D. Tex. Mar. 31, 1998).

In *Newton*, the United States Court of Appeals for the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. But, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant

medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth her analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67.

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work and "can understand, remember and carryout only simple, routine, and repetitive instructions." Tr. at 61-62. Plaintiff contends that in making this determination, the ALJ applied incorrect legal standards to the opinions of her treating physician, Zareena Raffi, M.D., and two examining psychiatrists, Susanne Fletcher and Teresa L. Jackson. Because Plaintiff challenges only the ALJ's determination that her mental impairments were not disabling, the Court will limit its review of the evidence to the evidence relevant to those impairments.

Dr. Raffi completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on June 4, 2012. *See* Tr. at 877-80. According to Dr. Raffi's assessment, Plaintiff was substantially limited in the ability to, among other things, apply commonsense understanding to carry out detailed but uninvolved written or oral instructions, maintain concentration and attention for extended two-hour periods, make simple work-related decisions, respond appropriately to changes in a routine work setting, behave in an emotionally stable manner, cope with normal work stress, or finish a normal week without interruption from psychologically based symptoms. Dr. Raffi opined that Plaintiff's mental impairments would cause her to be absent from work more than four days a month. Dr. Raffi diagnosed Plaintiff with major depressive

disorder, single episode, severe with psychotic features, and a global assessment of functioning ("GAF") score of 43.

The ALJ acknowledged that Dr. Raffi was a treating physician, but gave Dr. Raffi's opinion little weight because the ALJ found it to be inconsistent with Plaintiff's treatment history. *See id.* at 63. Without discussion, the ALJ explained that she accorded Dr. Raffi's opinion little weight because "over the course of the claimant's treatment history she generally presented for routine follow up and medication refills only. She indicated that her medications were effective and had mental status exams during which she exhibited organized thoughts, no psychosis, intact memory, and adequate insight and judgment. At times, she complained of insomnia and command hallucinations but for the most part responded well to her medications and denied psychosis." *Id.* The ALJ also accorded Dr. Raffi's GAF score little weight "because it typically indicates serious psychiatric symptomatology, which is not evidenced by Metrocare treating notes." *Id.*

The ALJ also gave little weight to the GAF scores assessed by the examining psychiatrists. *See id.* at 62-63. Dr. Fletcher assessed a GAF score of 50, *see id.* at 577, and Dr. Jackson assessed a GAF score of 35, *see id.* at 607. The ALJ accorded Dr. Fletcher's GAF score little weight because "the assessment is at odds with the claimant's overall treatment history that suggests good control of her symptoms with the use of psychotropic medications." *Id.* at 63. The ALJ concluded that Dr. Jackson's GAF score "was largely due to the claimant's subjective report of delusions and

hallucinations," and accorded it little weight "because the evidence shows that the claimant's hallucinations were generally well controlled by her medications, and the delusions were rarely, if ever, reported over the course of her treatment history." *Id.*

Conversely, the ALJ accorded great weight to the opinion of "state psychological consultants who found that the claimant retained the ability to understand, remember and carryout simple instructions, make simple decisions, attend and concentrate for extended periods and interact adequately with coworkers and supervisors" because the opinion was "consistent with the longitudinal record, which demonstrates that the claimant's symptoms were well controlled with medication." *Id.* at 64.

The facts of this case put it squarely within *Newton*'s purview. The ALJ rejected not only the treating physician's opinion but also that of the examining physicians. She did not give the treating psychiatrist's opinion any significant weight, she rejected the examining psychiatrists's opinions, and she gave the state agency medical consultant's opinions great weight as the opinions of non-examining sources. But she failed to identify any acceptable medical source on which her RFC determination was based. Per *Newton*'s strictures, when the ALJ decided to afford essentially no weight to the opinions of the treating and examining physicians, and instead cobbled together an RFC that is not supported by the opinion of any acceptable medical source, the ALJ had an obligation to consider each of the Section 416.927(c)(2) factors. *See Newton*, 209 F.3d at 453; *see also Loza v. Apfel*, 219 F.3d 378, 393-94 (5th Cir. 2000) ("Finally, it is

11

clear that the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position.").

And, while the ALJ stated that she reviewed the evidence in accordance with 20 C.F.R. §§ 404.1527 and 416.927(c)(2), she did not appear to do so. There is no discussion of the treating physician's length of treatment or frequency of examination; nor is there any discussion of the nature and extent of the treatment relationship. While there is some discussion of the medical evidence record as a whole, there is no analysis of the support afforded to the physician's opinion by the medical evidence of record, the consistency of the opinion with the record as a whole, or the specialization of the treating physician.

The Court acknowledges that the ALJ did recite, with no further elaboration, that she considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSRs 96-4p and 96-7p," and that she "also considered opinion evidence in accordance with the requirements of 20 CFR §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." *See* Tr. at 62. But this statement, on its own, is not sufficient to satisfy *Newton*. *See Gerken v. Colvin*, No. 3:13-cv-1586-BN, 2014 WL 840039, at *6 (N.D. Tex. Mar. 4, 2014). The Court also notes that the evidence in the record may well support a finding that Plaintiff is not disabled. But "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*,

209 F.3d at 455. "Reviewing courts do not consider rationales supporting an ALJ's decision that are not invoked by the ALJ." *Bragg*, 567 F. Supp. 2d at 907.

The ALJ's failure to consider the Section 416.927(c)(2) factors when rejecting Dr. Raffi's opinion was prejudicial error. It is the ALJ's responsibility to weigh the evidence, and the Court is unable to say what the ALJ would have done had she weighed all relevant evidence of record. The opinions expressed by Dr. Raffi included significant limitations beyond those that the ALJ recognized in determining both Plaintiff's RFC and her ability to engage in any form of substantial gainful activity. Had the ALJ given proper consideration to the treating physician's records and assessment of Plaintiff's ability to engage in work-related activities, the ALJ might have reached a different decision as to disability. This is especially true in light of the fact that the burden lies with the Commissioner at Step 5 to identify gainful employment available in the national economy that the claimant is capable of performing. *See Greenspan*, 38 F.3d at 236; see also *Myers v. Apfel*, 238 F.3d 617, 621-22 (5th Cir. 2001) (holding that remand was required when the ALJ failed to consider all evidence from a treating source and failed to present good cause for rejecting it); *Newton*, 238 F.3d at 621-22 (holding that remand was required when the ALJ failed to consider each of the Section 416.927(c)(2) factors before declining to give weight to the opinions of the claimant's treating specialist); *Harris v. Astrue*, No. 3:11-cv-1089-M-BH, 2012 WL 4442303, at *15 (N.D. Tex. Sept. 7, 2012), *rec. adopted*, 2012 WL 4458405 (N.D. Tex. Sept. 26, 2012).

## Conclusion

The hearing decision is reversed, and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

SO ORDERED.

DATED: January 10, 2017

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

14